IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEPHANIE VINCENT,                )
                                  )
            Plaintiff,            )
                                  )
      v.                          )     1:20CV51
                                  )
NORTH CAROLINA DEPARTMENT         )
OF TRANSPORTATION, SEPI           )
ENGINEERING & CONSTRUCTION,       )
INC., and JEFF PARK,              )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

 This matter is before the court on Defendant North Carolina
Department of Transportation's ("DOT") Motion to Dismiss
Plaintiff Stephanie Vincent's Complaint for Title VII and state
law violations. (Doc. 5.) DOT moves to dismiss Plaintiff's
Complaint under Federal Rules of Civil Procedure 8, 12(b)(1),
12(b)(6), and 12(h)(3).[1] (Id.) For the reasons set forth herein,
this court will deny in part and grant in part Defendant's
Motion to Dismiss.

---

 [1] Defendants Jeff Park and SEPI Engineering & Construction,
Inc., have not joined this Motion to Dismiss. SEPI Engineering &
Construction, Inc. has filed an Answer in this case, (Doc. 14),
as has Jeff Park, (Doc. 22).

## I. BACKGROUND

### A. Parties

Plaintiff resides in Guilford County, North Carolina. (Complaint ("Compl.") (Doc. 2) ¶ 1.) Plaintiff is an African-American woman. (Id.) Defendant DOT is a North Carolina agency. (Id. ¶ 2.) Defendant SEPI Engineering & Construction, Inc. ("SEPI") is a corporation organized under the laws of North Carolina, which provides engineering and construction services. (Id. ¶ 3.) Defendant Jeff Park also resides in North Carolina and was employed by Defendant SEPI at the relevant time. (Id. ¶ 4.) Defendant Park was a contract employee with Defendant DOT. (Id. ¶ 7.)

### B. Factual Background

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)).

Although a motion to dismiss "tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and this court's evaluation is "thus generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016), this court may consider documents that are

- 2 -

incorporated into the complaint by reference where the document is integral to the complaint, see id. at 166, and the plaintiff does not challenge its authenticity, see Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a plaintiff who might not have notice of (and an opportunity to fully respond to) facts newly introduced by the defendant in conjunction with motion of dismissal."). Other courts within the Fourth Circuit have considered Equal Employment Opportunity Commission ("EEOC") charges attached to motions to dismiss, where plaintiffs relied on those documents in their complaints and did not contest the exhibits' authenticity. See, e.g., Alexander v. City of Greensboro, No. 1:09-CV-934, 2011 WL 13857, at *6-8 (M.D.N.C. Jan. 4, 2011); Cohen v. Sheehy Honda of Alexandria, Inc., No. 1:06cv441 (JCC), 2006 WL 1720679, at *2 (E.D. Va. June 19, 2006) (EEOC charge was integral to Complaint because plaintiff "would have been unable to file a civil action without first filing such a charge").

This court finds that Plaintiff's Complaint incorporates by reference Plaintiff's Charge of Discrimination to the Equal Employment Opportunity Commission, which Defendant DOT attached

- 3 -

as an exhibit to its Motion to Dismiss, (Def. DOT's Mot. to Dismiss ("Def.'s Mot.") (Doc. 5) at 3-4).[2]

First, the Charge of Discrimination is integral to Plaintiff's Complaint. The same incidents form the basis for the allegations in Plaintiff's Complaint and the Charge of Discrimination, (compare Compl. (Doc. 2), with Def.'s Mot. (Doc. 5) at 3-4), and this court's jurisdiction is predicated on Plaintiff having filed the Charge of Discrimination and received a Right to Sue Letter, see 42 U.S.C. § 2000e-(5)(f) et seq. Plaintiff's Complaint establishes that Plaintiff "timely filed a charge of sexual harassment, racial discrimination, and retaliation with the Equal Employment Opportunity Commission within 180 days of the last discriminatory action" and received a right to sue letter prior to filing this action, (Compl. (Doc. 2) ¶ 16), as required for jurisdiction for Title VII claims, see 42 U.S.C. § 2000e-(5)(f)) et seq.

Second, Plaintiff does not challenge the authenticity of the Charge of Discrimination. Plaintiff refers to the Charge of Discrimination in her Complaint, (see Compl. (Doc. 2 ¶ 16), and relies on it to support her arguments in her Memorandum in

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 4 -

Response to Defendant DOT's Motion to Dismiss, (see Pl.'s Resp. Memo in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (Doc. 12), at 2-3.) Defendant DOT cites allegations in the Charge of Discrimination in its memorandum filed in support of its Motion to Dismiss. (See e.g., Def.'s Mem. in Supp. to Motion to Dismiss ("Def.'s Br.") (Doc. 6) at 8.) Plaintiff has not raised an objection to consideration of these facts. (See Pl.'s Resp. (Doc. 12).) In the absence of any objection, this court will consider the allegations in the Complaint to incorporate those in the Charge of Discrimination, and the facts contained therein will be considered part of Plaintiff's Complaint.

The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff worked for Defendant DOT as an administrative assistant. (Compl. (Doc. 2) ¶ 5.) She alleges that shortly after she began working for Defendant DOT on or around April 21, 2018, (Def.'s Mot. (Doc. 5) at 3-4), Defendant Park began sexually harassing her, (Compl. (Doc. 2) ¶ 6). This included sexual comments, unauthorized touching, and "verbal sexual innuendos." (Id.) Plaintiff objected to this conduct, but Defendant Park allegedly "encouraged other employees to join in." (Id.)

Plaintiff reported Defendant Park's alleged behavior to Employee Relations on May 31, 2018, (Def.'s Mot. (Doc. 5) at 3),

- 5 -

and to her supervisor, Jeremy Guy, on an unknown date. (Compl. (Doc. 2) ¶ 8.) Plaintiff alleges in her Charge of Discrimination to the EEOC that she also reported incidents of "bullying and intimidation" by her supervisor, the "Division 9 Resident Engineer." (Def.'s Mot. (Doc. 5) at 3.) Employee Relations allegedly opened an investigation corroborating Plaintiff's report of sexual harassment. (Id.) Plaintiff's Charge of Discrimination alleges that the sexual harassment stopped following her report. (Id.)

Plaintiff alleges she began experiencing retaliation after reporting the conduct. She was allegedly told that she could be fired and was refused training offers and guidance on her duties as a new employee, though it is unclear from Plaintiff's Complaint who took these actions. (Compl. (Doc. 2) ¶ 9.) Plaintiff's supervisor also allegedly "made it quite clear to her that he needed Mr. Park more than he needed her for his department to operate." (Id.) In her Charge to the EEOC, Plaintiff alleges that on June 21, 2018, she met with the Division 9 Construction Director and the Division 9 Resident Engineer, where she received a letter with "false allegations about [her] work performance." (Def.'s Mot. (Doc. 5) at 3.) She alleges that the letter was in retaliation for reporting being

- 6 -

sexually harassed by Defendant Park and bullying from the
Division 9 Resident Engineer. (Id.)

Plaintiff alleges that the management team did not take her
complaints seriously due to her being African-American, and that
Defendant DOT has responded more effectively to sexual
harassment complaints lodged by women of other races. (Compl.
(Doc. 2) ¶ 10.)

Plaintiff filed a Charge of Discrimination with the EEOC On
October 9, 2018, alleging she had been subjected to a "sexually
hostile work environment based on sex (female) and race (black)"
and had been disciplined in retaliation for engaging in a
protected activity. (Def.'s Mot. (Doc. 5) at 3.)

Plaintiff was terminated on December 19, 2018, allegedly in
retaliation for her "objection to and the reporting of the
sexual harassment she experienced." (Compl. (Doc. 2) ¶ 11.)

Plaintiff alleges Caucasian employees who had the same
performance deficiencies were neither subject to discipline or
termination, as was the case with Plaintiff. (Id.)

Plaintiff contends Defendant DOT was aware of Defendant
Park's history of behavior and retained him as a contract
employee its job sites. (Id. ¶ 12.)

- 7 -

C.   **Procedural History**

Plaintiff filed a charge of sexual harassment, racial discrimination, and retaliation with the EEOC on October 9, 2018, (Def.'s Mot. (Doc. 5) at 3), and the EEOC issued her a right to sue letter on September 13, 2019. (Id. at 4.)

Plaintiff originally filed her Complaint in the Guilford County Superior Court on December 13, 2019. (Doc. 1 at 8.) Defendants removed the case to this court.[3] (Id. at 1.) This court has federal question jurisdiction over this case under 28 U.S.C. § 1331. (Id.) Defendant DOT filed a Motion to Dismiss under Fed. R. Civ. P. 8, 12(b)(1), 12(b)(6), and 12(h)(3), (Def.'s Mot. (Doc. 5)), and a supporting memorandum, (Def.'s Br. (Doc. 6)). Plaintiff responded, (Pl.'s Resp. (Doc. 12)), and Defendant DOT did not file a Reply. This matter is ripe for adjudication.

II.   **STANDARDS OF REVIEW**

Defendants move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion,

_____

[3] Plaintiff notes in her Response to Defendant DOT's Motion to Dismiss that the Complaint was filed in North Carolina State court, where Iqbal and Twombly do not apply, and correspondingly requests permission to amend her Complaint to include additional facts if the allegations are not plausible. (See Pl.'s Resp. (Doc. 12) at 4.) Plaintiff's counsel is capable of amending the Complaint upon removal to comply with federal rules and cannot rely upon this court to provide guidance or advice.

- 8 -

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet this plausibility standard; however, the plaintiff is not required to make out a prima facie case of discrimination or satisfy any heightened pleading requirements at the motion to dismiss stage.

- 9 -

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584-85 (4th Cir. 2015). The plaintiff need only plead facts that permit the court to reasonably infer each element of the prima facie case. McCleary-Evans, 780 F.3d at 585; see also Coleman v. Md. Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race).

Defendant also moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3). Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject-matter jurisdiction. See Demetres v. East West Constr., Inc., 776 F.3d 271, 272 (4th Cir. 2015). A defendant may challenge subject-matter jurisdiction facially or factually. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. See id. The court then effectively affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." Id.

In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. Id. at 192-93.

## III. ANALYSIS

Plaintiff alleges the following causes of action against Defendant DOT: First, a violation of Title VII and North Carolina public policy; second, negligent retention under North Carolina state law; and third, personal injury and emotional distress under North Carolina state law. (Compl. (Doc. 2) at 1-4.)[4]

---

[4] Fed. R. Civ. P. 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Fed. R. Civ. P. 10 requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The rule further suggests that to "promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Id. Plaintiff's Complaint is not clear. It jumbles transactions and claims together and appears to include separate claims in the same paragraphs and in the same cause of action. "Pleadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and this court has construed the Complaint in a manner consistent with the EEOC charge, drawing all inferences in favor of Plaintiff so as to do justice. However, because of Plaintiff's pleading failures, this court is compelled to refer to the various claims as construed by the type of claim, rather than to separate counts or claims as suggested by Fed. R. Civ. P. 10(b).

- 11 -

## A. Plaintiff's First Cause of Action

Plaintiff's first cause of action encompasses both a federal Title VII claim and a claim for a violation of North Carolina public policy. (Id. ¶¶ 15-16.)

### 1. Title VII

Plaintiff alleges claims of retaliation in violation of Title VII, as well as sexual harassment and racial discrimination. (See Compl. (Doc. 2) ¶¶ 9, 11; Def.'s Mot. (Doc. 5) at 3-4) The court will address each ground for relief in turn.

#### a. Retaliation

It is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To survive a motion to dismiss, a plaintiff with a Title VII retaliation claim must allege facts that allow a court to find the following elements: "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." Perkins v. Int'l

- 12 -

_Paper Co._, 936 F.3d 196, 213 (4th Cir. 2019); _see also_ _Savage v._
_Maryland_, 896 F.3d 260, 276 (4th Cir. 2018). Alternatively, a
plaintiff may survive a motion to dismiss by alleging direct
evidence of retaliation. _Netter v. Barnes_, 908 F.3d 932, 938
(4th Cir. 2018). In the context of retaliatory discharge, "this
means an employee may proceed by showing directly that she was
fired in retaliation for protected activity." _Id._ The choice for
how to proceed is "left to the plaintiff's discretion," _Foster_
_v. Univ. of Md.-E. Shore_, 787 F.3d 243, 249 (4th Cir. 2015), and
Plaintiff offers only indirect evidence of discrimination,
(_compare_ Def.'s Br. (Doc. 6), at 7, _with_ Pl's Resp. (Doc. 12),
at 5-7).

### i.    **Adverse Employment Actions**

Plaintiff alleges she experienced two adverse employment
actions under the second element of the prima facie case. First,
Plaintiff alleges that after she reported Defendant Park's
behavior to her supervisor and Employee Relations, she
experienced "threats that she could be fired, refusal to offer
her training and guidance on performance of her duties as a new
employee, and disciplinary actions consisting of false
allegations regarding her performance." (Compl. (Doc. 2) ¶ 9.)
Defendant argues Plaintiff has failed to include sufficient

- 13 -

factual allegations to establish that this constituted an adverse employment action. (Def.'s Br. (Doc. 6) at 8.)

Second, Plaintiff alleges she was terminated from her position in retaliation for reporting sexual harassment. (Compl. (Doc. 2) ¶ 11.) Defendant does not challenge whether this is an adverse employment action. (Def.'s Br. (Doc. 6) at 8).

An adverse employment action in a retaliation claim is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Wells v. Gates, 336 F. App'x 378, 383 (4th Cir. 2009) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). An action is not materially adverse if it amounts to "petty slights or minor annoyances that often take place at work and that all employees experience." Burlington N. & Santa Fe Ry., 548 U.S. at 68. A "poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (internal quotation marks and citation omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

- 14 -

benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). "However, a performance evaluation which merely causes 'a loss of prestige or status' is not actionable." Clapp v. Potter, 329 F. Supp. 2d 597, 599 (M.D.N.C. 2004) (citing James, 368 F.3d at 377)).

Plaintiff alleges that she engaged in a protected activity on May 31, 2018, when she complained to Employee Relations about sexual harassment. (Def.'s Mot. (Doc. 5) at 3.) Plaintiff alleges that on June 21, 2018, she met with the Division 9 Construction Director and her supervisor, where she received a letter containing "false allegations about [her] work performance." (Id.) She also learned at the meeting that she would be terminated from employment if she continued to perform poorly. (Id.) Plaintiff also alleges that at some time between when she filed a report with Employee Relations on May 31, 2018, and her termination on December 19, 2018, she experienced retaliation through "threats that she could be fired, refusal to offer her training and guidance on performance of her duties as a new employee, and disciplinary actions consisting of false allegations regarding her performance." (Compl. (Doc. 2) ¶¶ 9, 11.) Plaintiff's Complaint does not provide additional facts about who conveyed these threats and in what manner; the nature of training and performance guidance she did not receive; or

- 15 -

specific content regarding her performance feedback, (id. ¶ 9),
and in response, Defendant argues these allegations are
"conclusory" and cannot be construed as adverse employment
actions, (Def.'s Br. (Doc. 6), at 8).

This court disagrees. Although a poor performance review is
not by itself an adverse employment action, James, 368 F.3d at
377, Plaintiff alleges that her "performance deficiencies" were
used to justify her termination from employment, (see Compl.
(Doc. 2) ¶ 11). Firing someone from their job is a "significant
change in employment status." Burlington Indus., 524 U.S. at
761. As Plaintiff's poor performance review subsequently led to
her termination of employment, it is more than a "petty slight"
or a "minor annoyance," Burlington N. & Santa Fe Ry., 548 U.S.
at 68, but instead, a consequential employment action that would
"dissuade[] a reasonable worker from making or supporting a
charge of discrimination," Wells, 336 F. App'x at 383. Even
without more specific details, the facts alleged support a
reasonable inference that adverse employment actions occurred on
June 21, 2018, and at other times between May 31, 2018, and
December 19, 2018, when Plaintiff was terminated from her job.

### ii. **Causal Connection**

The facts alleged also support a reasonable inference of a causal connection between the adverse employment actions and the protected activity.

Proving causation at the pleading stage is "not [] onerous," and retaliation plaintiffs "do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action." Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018). Defendant DOT is incorrect that Plaintiff must show but-for causation at this stage in the proceedings. (See (Def.'s Br. (Doc. 6) at 7.). If a plaintiff's complaint survives to the pretext stage in the McDonnell Douglas framework, it is at that point that they must prove but-for causation. Strothers, 895 F.3d at 335 (citing Foster, 787 F.3d at 251). Still, plaintiffs must allege facts plausibly supporting an inference of causation, a task that may be accomplished by alleging facts that show the employer took an adverse action "soon after becoming aware" of protected activity. Strothers, 895 F.3d at 336 (emphasis added); see also Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 899, 901 (4th Cir. 2017) (discussing importance of an employer's subjective knowledge since an adverse action must be motivated by a desire to retaliate in order to be actionable); Carter v. Ball, 33 F.3d

- 17 -

450, 460 (4th Cir. 1994) (dealing with termination following notice employee filed EEOC charge); Welton v. Durham Cnty., No. 1:17CV258, 2018 WL 4656242, at *3 (M.D.N.C. Sept. 27, 2018), aff'd, 781 F. Appx. 242 (4th Cir. 2019) (discussing Strothers, 895 F.3d at 335–36).

If a plaintiff is proving causation by temporal proximity alone, the adverse employment action must be "very close" in time to the protected activity. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam). "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see also Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 656 (4th Cir. 2017) (finding that eight to nine months between awareness of the protected activity and the alleged adverse employment action is not sufficiently close in time). If too long a period of time passes between the protected activity and the retaliatory conduct, "courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Gaps of three or four months between protected activity and an adverse action have been found to break causation. See Breeden, 532 U.S. at 273-75 (citing, with approval, courts have found periods of three and four months too long); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that two and a half months probably too long a lapse in time, barring other circumstances that explain the gap). Closer to this case, the Fourth Circuit has found a lapse of thirteen months too long to establish causation. Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.").

"In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" Lettieri, 478 F.3d at 650 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). "[E]vidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri, 478 F.3d at 650.

Defendant argues that the six and a half months that elapsed between when Plaintiff reported her allegations of sexual harassment to Employee Relations on May 31, 2018, and

- 19 -

when Plaintiff was terminated from her position on December 18, 2018, are too long to establish temporal causation. (Def.'s Br. (Doc. 6) at 8.) Defendant's argument does not, however, account for the fact that Plaintiff's Complaint alleges other adverse employment actions occurred prior to Plaintiff's termination. Only twenty-one days elapsed between Plaintiff's May 31, 2018 report to Employee Relations and the June 21, 2018 meeting where she received poor performance feedback and was warned she could lose her job. This alleged adverse employment activity occurred "very close" in time to the alleged protected activity, see Breeden, 532 U.S. at 273, and this court can reasonably infer a causal relationship between these two events as required for a claim of retaliation under Title VII.

Moreover, Plaintiff alleges additional adverse employment actions occurred over the time period between May 31, 2018, and December 19, 2018, in which Plaintiff received poor performance reviews and threats she would be fired and was denied training. (See discussion supra Section III.A.1.a.i.) Although the specifics of when these actions occurred are not known, because Plaintiff has plausibly established that other adverse employment actions occurred during the six-month period between when she reported her allegations to Employee Relations and was fired, (see discussion supra Section III.A.1.a.i), those

- 20 -

continuing actions are sufficient to plausibly infer there was not a "lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action" which would "negate[] any inference that a causal connection exists between the two," Dowe, 145 F.3d at 657.

Because Plaintiff has plausibly alleged a claim of retaliation, this court will deny Defendant's Motion to Dismiss the claim under Rule 12(b)(6).

### b. <u>Sexual Harassment</u>

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action," for sexual harassment. EEOC v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001).

A plaintiff's complaint of sexual harassment based on an abusive or hostile work environment must allege facts that allow a court to infer that "(1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable

- 21 -

on some factual basis to the employer." <u>Crockett v. Mission</u> <u>Hosp., Inc.</u>, 717 F.3d 348, 354 (4th Cir. 2013).

Plaintiff's Complaint alleges that shortly after her hire, she began experiencing sexual harassment from her coworker, Defendant Park, including "inappropriate sexual comments, unauthorized touching, and verbal sexual innuendos in the workplace." (Compl. (Doc. 2) ¶ 6.) Defendant DOT argues that Plaintiff has not plausibly alleged a claim for sexual harassment based on a hostile work environment. (Def.'s Br. (Doc. 6) at 9.)

Whether an environment is hostile is determined by examining the totality of the circumstances from the "perspective of a reasonable person in the plaintiff's position." <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81 (1998). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993). Hostile work environment claims "often involve repeated conduct" because "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own" unless that

act is "extremely serious." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015).

The facts alleged do not support a reasonable inference that the conduct was so severe or pervasive so as to alter the conditions of Plaintiff's employment and to create an abusive work environment. Although Defendant Park may have engaged in sexual conduct towards Plaintiff, Plaintiff does not allege any facts about the frequency and duration of the "unauthorized touching, and verbal sexual innuendos." (Compl. (Doc. 2) ¶ 6). This court cannot infer from the facts alleged whether the "inappropriate sexual comments" were merely offensive or whether they rose to the level that they were threatening, humiliating, or interfered with her work performance. (Id.)

Moreover, Plaintiff's Charge of Discrimination to the EEOC alleges that the conduct "stopped" once she complained to Employee Relations. (Def.'s Mot. (Doc. 5) at 3.) That the conduct stopped supports a reasonable inference that the conduct did not persist to the point where it altered the conditions of Plaintiff's employment.

Finally, the facts do not support a reasonable inference that the conduct was imputable to Plaintiff's employer. Plaintiff alleges that Defendant Park was her "coworker," not her supervisor, (Compl. (Doc. 2) ¶ 6.), and nothing in

- 23 -

Plaintiff's Complaint suggests that Defendant Park was "empowered by the employer to take tangible employment actions against [Plaintiff]." Boyer-Liberto, 786 F.3d at 278 (citing Vance v. Ball State Univ., 570 U.S. 421, 424 (2013)). When the alleged "harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." Boyer-Liberto, 786 F.3d at 278. An employer is negligent "if it knew or should have known about the harassment and failed to take effective action to stop it." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333-34 (4th Cir. 2003) (en banc).

Plaintiff's pleaded facts undermine her conclusory allegation that "Defendant DOT failed to take reasonable action to prevent the . . . sexual harassment and to correct the situation when notified by Plaintiff." (Compl. (Doc. 2) ¶ 12.) Because Employee Relations allegedly "initiated an investigation that corroborated Plaintiff's reports of sexual harassment," (id. ¶ 8), and the alleged harassment subsequently "stopped," (Def.'s Mot. (Doc. 5) at 3), this court reasonably infers from the facts that Defendant DOT was not negligent in controlling

- 24 -

the working conditions.[5] Thus, the conduct is not reasonably imputable to Defendant DOT.

Because Plaintiff has not plausibly established the elements for a claim of sexual harassment based on a hostile work environment, this court will dismiss the claim under Rule 12(b)(6).

### c. __Racial Discrimination__

The court finds that Plaintiff has not plausibly alleged a claim for racial discrimination.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his . . . privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman, 626 F.3d at 190.

Plaintiff does not plausibly allege that she was treated differently than a similarly situated employee as a result of

---

[5] Nor is there any allegation that Plaintiff's employer was aware of the alleged sexual harassment prior to Plaintiff reporting it to Employee Relations on May 31, 2018.

her race or sex. First, with regard to the alleged sexual harassment, Plaintiff alleges that her "concerns were not important and/or not taken seriously by her management team due to her race," and that "Defendant DOT has responded more effectively to claims of sexual harassment presented by women of other races." (Compl. (Doc. 2) ¶ 10.) Yet, the Complaint does not provide additional facts about when and how women of other races who reported sexual harassment were treated more favorably. Given that Plaintiff alleges that Employee Relations "initiated an investigation that corroborated Plaintiff's reports of sexual harassment," (id. ¶ 8), and the harassment "stopped" after Plaintiff reported it, (Def.'s Mot. (Doc. 5) at 3), this court cannot reasonably conclude that there was a way in which Defendant DOT could have responded more effectively or would have treated her differently had she been of a different race.

Second, with regard to her termination from employment, Plaintiff alleges that "Caucasian coworkers had performed the same actions that were alleged to be [sic] performance deficiencies leading to disciplinary action for Plaintiff without receipt of any discipline or termination of their employment." (Compl. (Doc. 2) ¶ 11.) The Complaint does not establish the nature of the performance deficiencies or who

- 26 -

these similarly situated coworkers were. In the absence of more facts, the allegations are "mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 678.

Because Plaintiff has not plausibly alleged a claim of racial discrimination, this court will dismiss the claim under Rule 12(b)(6).

### 2. <u>North Carolina Public Policy</u>

The court will grant Defendant's Motion to Dismiss Plaintiff's claims under North Carolina's Equal Employment Practices Act ("NCEEPA").[6]

"North Carolina is an employment-at-will state. . . . [The North Carolina Supreme] Court has recognized a public-policy exception to the employment-at-will rule." <u>Kurtzman v. Applied Analytical Indus., Inc.</u>, 347 N.C. 329, 331-32, 493 S.E.2d 420,

---

[6] Although not raised by the parties, this claim is likely barred by sovereign immunity, as Defendant DOT is a state agency, (<u>see</u> Compl. (Doc. 2) ¶ 2), and North Carolina has not waived sovereign immunity for claims brought against state agencies under NCEEPA, <u>see, e.g.</u>, <u>Howell v. N.C. Cent. Univ.</u>, No. 1:16CV576, 2017 WL 2861133, at *14 (M.D.N.C. July 5, 2017); <u>Hooper v. North Carolina</u>, 379 F. Supp. 2d 804, 814 (M.D.N.C. 2005) (finding that sovereign immunity barred the plaintiff's wrongful discharge claim filed under NCEEPA against North Carolina Central University); <u>Dai v. Univ. of N.C., at Chapel Hill</u>, No. 1:02CV224, 2003 WL 22113444, at *5 n.5 (M.D.N.C. Sept. 2, 2003) ("[B]ecause North Carolina has indeed retained sovereign immunity in its own courts from tort claims, the State is likewise entitled Eleventh Amendment immunity when common law tort claims, such as wrongful discharge, that seek monetary damages are brought into federal court through pendent jurisdiction.").

422 (1997); see also Coman v. Thomas Mfg. Co., 325 N.C. 172, 175-76, 381 S.E.2d 445, 447 (1989).

The NCEEPA provides that:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2(a).

"Neither the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA. Instead, most courts have applied the NCEEPA only to common law wrongful discharge claims or in connection with other specific statutory remedies." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); see also McLean v. Patten Cmtys., Inc., 332 F.3d 714, 720 (4th Cir. 2003); Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 810-11 (M.D.N.C. 2011). A plaintiff therefore may succeed on a public policy claim under the NCEEPA when she "allege[s] facts sufficient to support a claim that [her] firing was 'motivated by an unlawful reason or purpose that is against public policy,'" such as racial discrimination. Bigelow v. Town of Chapel Hill, 227 N.C. App. 1, 11, 14, 745 S.E.2d 316, 324, 326

- 28 -

(2013) (quoting <u>Garner v. Rentenbach Constructors Inc.</u>, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999)).

North Carolina courts have consistently held that "[t]he public policy exception to the employment-at-will doctrine is a 'narrow exception.'" <u>Roberts v. First-Citizens Bank & Trust Co.</u>, 124 N.C. App. 713, 721, 478 S.E.2d 809, 814 (1996) (<u>quoting</u> <u>Williams v. Hillhaven Corp.</u>, 91 N.C. App. 35, 39, 370 S.E.2d 423, 425 (1988). The NCEEPA does not create a private right of action for retaliation, <u>McLean</u>, 332 F.3d at 719, nor sexual harassment, <u>Smith</u>, 202 F.3d at 247. "[A]bsent a clear indication from the North Carolina courts or legislature 'it would be inappropriate for a federal court to create a private right of action under [§ 143-422.2].'" <u>McLean</u>, 332 F.3d at 719 (<u>citing</u> <u>Smith</u>, 202 F.3d at 247).

In the section of her Complaint where Plaintiff states her claims for racial discrimination, sexual harassment based on a hostile work environment, and retaliation under Title VII, Plaintiff appears to assert the same claims under NCEEPA. (<u>See</u> Compl. (Doc. 2) ¶ 15). Because NCEEPA does not create a private cause of action for retaliation or sexual harassment, and Plaintiff does not point to an independent statutory remedy for the claims, this court will dismiss these claims and consider only Plaintiff's claim for racial discrimination.

- 29 -

The legal standard for proving a state law discrimination claim under NCEEPA is the same as for racial discrimination claim under Title VII, following the prima facie elements established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983) (finding that because "[t]he ultimate purpose of [NCEEPA] and Title VII] is the same; . . . [w]e therefore adopt the evidentiary standards and principles of law" for Title VII claims). As Plaintiff fails to plausibly allege a claim of racial discrimination under Title VII, (see discussion supra Section III.A.1.c), Plaintiff's claim also fails under NCEEPA.

Accordingly, the court will grant Defendant's Motion to Dismiss Plaintiff's North Carolina public policy claims for racial discrimination.

### B.   Plaintiff's Second and Third Causes of Action

Plaintiff's second and third causes of action encompass claims of negligent retention, personal injury, and emotional distress under North Carolina law. (See Compl. (Doc. 2) at 3-4.)

Plaintiff alleges two torts of negligence: negligent retention, as part of her second cause of action, (see Compl. (Doc. 2) at 3), and negligent infliction of emotional distress, as part of her third cause of action, (see id. ¶ 25).

- 30 -

Plaintiff's third cause of action also alleges a claim of intentional infliction of emotional distress, (id.) which is an intentional tort, see Dickens v. Puryear, 302 N.C. 437, 452-53, 276 S.E.2d 325, 334-35 (1981).

Defendant argues Plaintiff lacks subject matter jurisdiction on facial grounds because North Carolina's doctrines of sovereign immunity bar these claims against Defendant DOT, a state agency. (See Def.'s Br. (Doc. 6) at 13-14.)

The Eleventh Amendment to the United States Constitution limits the jurisdiction of the federal courts to hear cases against states and state employees acting in their official capacities. Kitchen v. Upshaw, 286 F.3d 179, 183-84 (4th Cir. 2002). A state may "directly and affirmatively waive its Eleventh Amendment immunity in a state statute or constitutional provision, as long as the provision explicitly 'specif[ies] the State's intention to subject itself to suit in federal court.'" Booth v. Maryland, 112 F.3d 139, 145 (4th Cir. 1997) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)) (brackets in original).

Plaintiff alleges that Defendant DOT is a "North Carolina . . . agency." (See Compl. (Doc. 2) ¶ 2). The State of North Carolina and its agencies have "absolute immunity in tort

- 31 -

actions without regard to whether it is performing a governmental or proprietary function except insofar as it has consented to be sued or otherwise expressly waived its immunity. Claims for tort liability are allowed only by virtue of the express waiver of the State's immunity." Guthrie v. N.C. State Ports Auth., 307 N.C. 522, 534-35, 299 S.E.2d 618, 625 (1983). The North Carolina Tort Claims Act ("NCTA") waives sovereign immunity for "negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority . . . ." N.C. Gen. Stat. § 143-291(a). The North Carolina Industrial Commission has exclusive jurisdiction to hear negligence claims brought under the NCTA, Guthrie, 307 N.C. at 539-40, 299 S.E.2d at 628, which Plaintiff does not contest, (see Doc. 12 at 8).

Negligent infliction of emotional distress is a tort of negligence under North Carolina law, see Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 303-04, 395 S.E.2d 85, 97 (1990), as is negligent retention, see Medlin v. Bass, 327 N.C. 587, 590-91, 398 S.E.2d 460, 462 (1990). Although the NCTA partly waives sovereign immunity for negligence claims, the North Carolina Industrial Commission is the sole forum where such claims can be heard. Accordingly, this court lacks subject

matter jurisdiction to hear Plaintiff's claims of negligent retention and negligent infliction of emotional distress.

In contrast to negligence claims, the NCTA does not waive sovereign immunity for intentional torts, see White v. Trew, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013), which include intentional infliction of emotional distress. See Dickens, 302 N.C. at 452-53, 276 S.E.2d at 334-35. Because the NCTA does not waive sovereign immunity for intentional torts, this court does not have subject matter jurisdiction to hear Plaintiff's claim of intentional infliction of emotional distress.

IV.  **CONCLUSION**

For the reasons set forth herein, this court finds that Defendant DOT's Motion to Dismiss should be granted in part and denied in part. The motion is denied as to Plaintiff's claim of retaliation brought under Title VII. The motion is granted as to any claims brought by Plaintiff alleging racial discrimination or sexual harassment based on a hostile work environment and those claims are dismissed. Any claim of retaliation pursuant to N.C. Gen. Stat. § 143-422.1 et seq. is dismissed. Any claims of negligent retention or negligent infliction of emotional distress are dismissed without prejudice for lack of jurisdiction as a result of the limited waiver of sovereign immunity under North Carolina law. Any claims based on or

- 33 -

related to intentional infliction of emotional distress are dismissed.

**IT IS THEREFORE ORDERED** that Defendant North Carolina Department of Transportation's Motion to Dismiss, (Doc. 5), is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** as to Plaintiff's claims alleging racial discrimination or sexual harassment based on a hostile work environment. The motion is **DENIED** as to Plaintiff's claim of retaliation brought pursuant to Title VII.

This the 24th day of September, 2020.

_____
United States District Judge

- 34 -